UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL REDMOND ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-cv-13861-LTS |
| ) | |
| BOARD FOR CORRECTION OF ) | |
| NAVAL RECORDS and RAY MABUS, ) | |
| in his official capacity as SECRETARY ) | |
| OF THE UNITED STATES NAVY, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 7)

March 15, 2016

SOROKIN, J.

### I.      INTRODUCTION

Plaintiff Paul Redmond ("Redmond") brings this action against the Board of Correction of Naval Records (the "Board") and Ray Mabus, in his official capacity as Secretary of the United States Navy (collectively, the "Defendants"), seeking to upgrade his discharge from the Marine Corps.  Doc. No. 1.  The Defendants have moved to dismiss the complaint as time-barred under 28 U.S.C. § 2401(a) or Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Doc. No. 8.  For the reasons set forth below, the Court ALLOWS the motion.

### II.      BACKGROUND

Redmond received a "General Under Honorable Conditions" discharge from the Marine Corps on August 4, 1975, after completing six years of service in the Reserves.  Doc. No. 1 ¶¶ 1-2. Redmond seeks to upgrade to an "Honorable Discharge," focusing on certain duty and conduct

1

ratings in his service record.  Doc. Nos. 1 ¶¶ 12, 23; 1-3 at 5.  Redmond's service record shows that, on May 4, 1974, he received grades of 2.5, 2.0 and 2.0 for general military subjects, duty and conduct, respectively.  Doc. No 1-3 at 5.  When these low marks were averaged with the other marks he received during his six-year enlistment, they depressed his final averages for duty and conduct to below 4.0, the minimum average required to receive an honorable discharge.  Doc. No. 1 ¶¶ 13, 17.  Redmond claims that the low marks should not have been considered because they appear out of chronological order.  Id. ¶ 12.  The low marks, dated May 4, appear *after* the marks from July 27 and August 11.  Doc. Nos. 1 ¶ 12; 1-3 at 4-5.  Redmond further claims that the low marks were improperly entered by the signatory on his record, "KJMurphy," who inserted the marks for a time period for which he was not in command.  Doc. Nos. 1 ¶¶ 12, 21-22; 1-3 at 5.

On or about December 27, 2001, Redmond submitted an application to correct his military record.  Doc. Nos. 8-1; 8-2.  Counsel for Redmond indicated that he intended to forward a statement from Colonel Edward Murphy ("Col. Murphy"), a thirty-year Marine Corps veteran, who reviewed Redmond's record and "found grades given to Mr. Redmond to be inconsistent with his other marks."  Doc. No. 8-2 at 1.  Counsel represented that Col. Murphy would further state that "he was aware of irregularities in the administration department at Mr. Redmond's command" and that "Mr. Redmond's one infraction did not warrant a general discharge."  Id.

On July 18, 2002, the Board denied Redmond's application.  Doc. No. 8-3.  The Board noted that Redmond enlisted on August 5, 1969, was disciplined on May 5, 1974 for unauthorized absences from drill, and was counseled regarding unsatisfactory conduct and performance on May 18, 1975.  Id. at 1.  Further, the Board indicated that Redmond's average marks for conduct and proficiency were 3.9, and a minimum mark of 4.0 was required to receive an honorable discharge.

Id. at 1-2.  The Board informed Redmond that he was entitled to seek a reconsideration if he submitted "new and material evidence."  Id. at 2.

On July 8, 2011, present counsel, on behalf of Redmond, again sought an upgrade in Redmond's discharge status.  Doc. No. 1-2 at 1-2.  Counsel stated that "the significance of the sequencing of the marks was not revealed to me until on or about" June 1, 2011 by Col. Murphy. Id. at 1.  The letter explained that the low marks on Redmond's record appear chronologically out of order, *i.e.*, after marks with dates after the date of the disputed marks, May 4, 1974.  Id.  Counsel argued that the out-of-sequence marks caused Redmond's average to fall below 4.0 just as his final average was about to computed prior to his discharge, leaving him no notice or opportunity to rectify the situation.  Id. at 2.

Counsel attached a letter from Col. Murphy in which Col. Murphy stated that his purpose was "to provide a recommendation to the board" that Redmond receive an upgrade to an Honorable Discharge.  Doc. No. 1-2 at 5.  Col. Murphy informed the Board that he had reviewed Redmond's service record and calculated his averages in proficiency and conduct to be 4.1 and 4.05, respectively, once the lower marks from May 4, 1974 were excluded.  Id.  Col. Murphy explained he did not include the low marks because they were "noticeably out of sequence."  Id.

Despite some allegations to the contrary, the records submitted by Redmond are unclear as to whether Col. Murphy was Redmond's commander at the time the out-of-sequence marks were entered into Redmond's service record.  Counsel's 2011 letter to the Board stated that Col. Murphy "was not [Redmond's] Commander when the out-of-sequence mark was inputted."  Id. at 1.  But the letter goes on to state that "KJMurphy" was not in command when he entered marks in Redmond's record and that "[t]he marks which caused the average to fall . . . were during the time

period that Col. Edward Murphy was in command." Id. at 2.  Col. Murphy's letter is silent on this point.

The Executive Director of the Board responded on August 2, 2011 with his conclusion that "reconsideration is not appropriate at this time."  Doc. No. 1-5.  The letter noted that "[a]lthough, at least some of the evidence you have submitted is new, it is not material.  In other words, even if this evidence was presented to the Board, the decision would inevitably be the same." Id.

On November 16, 2015, Redmond sued the Defendants, seeking an order directing that his discharge be upgraded to Honroable.  Doc. No. 1 at 4.  On January 22, 2016, the Defendants moved to dismiss, Doc. No. 7, which Redmond opposes, Doc. No. 9.

III.    LEGAL STANDARD

A complaint will withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) only if it contains sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).  The complaint need not contain "detailed factual allegations," but it must set forth "more than labels and conclusions, . . . and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  A plaintiff fails to state a claim when he does not proffer "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

The Court generally "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."

4

Alternative Energy Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  An exception exists, however, "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Such documents "merge[] into the pleadings" and may be considered in a motion to dismiss pursuant to Rule 12(b)(6).  Alt. Energy, 267 F.3d at 33.

IV.    DISCUSSION

    A.  Documents Properly Considered

As a threshold matter, the Court must determine which documents may properly be considered in the course of the motion to dismiss.  Redmond attached to the complaint the July 2011 letter sent by his counsel to the Board seeking an upgrade in his discharge status, Doc. No. 1-2 at 1-2; an application for correction of his military record dated July 8, 2011, id. at 3-4; the letter from Col. Murphy to the Board dated June 28, 2011, id. at 5; Redmond's service record and general discharge, Doc. Nos. 1-3 & 1-4; and the letter from the Executive Director of the Board dated August 2, 2011 declining to reconsider Redmond's application, Doc. No. 1-5.  Redmond refers to these documents in the complaint to which they are attached, thus, the Court considers all of them.  Alt. Energy, 267 F.3d at 33.

Redmond's complaint makes no mention of his previous application for correction of his record.  Those records are attached to the Defendants' brief in support of their motion to dismiss, including the application dated December 7, 2000, Doc. No 8-1; Redmond's then-counsel's letter to the Board dated December 27, 2001, Doc. No. 8-2; and the Board's denial dated July 18, 2002, Doc. No. 8-3.  The Court concludes that it may consider all three documents because they are public records, their authenticity is not disputed by Redmond, and they are central to his claim.

Alt. Energy, 267 F.3d at 33. Also, Redmond has not objected to the Defendants' inclusion of the documents or moved to strike them. Finally, Redmond's complaint includes the Board's 2011 decision, which itself references the Board's 2002 disapproval of Redmond's prior application. Doc. 1-5.

Redmond attached his own affidavit to his opposition to the motion to dismiss. Doc. No. 9 at 9-11. The Court questions the propriety of considering the affidavit given that the Defendants have not had the opportunity to confirm or deny its authenticity, nor is it a public record or central to Redmond's claims. Even if the Court includes the affidavit in the collection of documents assessed with respect to the motion, however, the Court nonetheless concludes that the motion must be granted.

B.  Statute of Limitations as a Jurisdictional Bar

The statute of limitations applicable to the Administrative Procedure Act, 5 U.S.C. § 706, pursuant to which the Court reviews the Board's decision, provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The first question for the Court is whether this statute of limitations falls in the realm of the subject matter jurisdiction of the Court. In the past, courts have held that Section 2401(a) operates as "a jurisdictional condition attached to the government's waiver of sovereign immunity." E.g., P & V Enters. v. United States Army Corps of Eng'rs, 516 F.3d 1021, 1026 (D.D.C. 2008) (quoting Spannaus v. United States Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987)). If a court lacks subject matter jurisdiction, it must dismiss a suit absent further consideration. Herr v. United States Forest Serv., 803 F.3d 809, 813-14 (6th Cir. 2015). Relevant to this case, if the Court does not have subject matter jurisdiction due

to the expiration of the statute of limitations, it may not proceed to consider whether the limitations period was equitably tolled.  United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1631 (2015).

In Kwai Fun Wong, the Supreme Court considered whether the statute of limitations in the companion provision to Section 2401(a), Section 2401(b), is jurisdictional in nature.  Id. at 1629. The Court held that the provision is not jurisdictional and, therefore, the limitations period is subject to equitable tolling, reasoning that the statutory text, context and legislative history do not indicate "that Congress meant to enact something other than a standard time bar."  Id. at 1632. Thus, "equitable tolling is available in suits against the Government."  Id. at 1633.

The Sixth Circuit recently addressed the consequences of Kwai Fun Wong for Section 2401(a) in Herr v. United States Forest Serv., 803 F.3d 809 (6th Cir. 2015).  After a thorough examination of the legislative history of Section 2401(a), the Court held that the provision "was designed to serve as a standard, mine-run statute of limitations without jurisdictional qualities." Id. at 817.  The Court acknowledged that a split among the circuits now exists regarding the jurisdictional effect of Section 2401(a), but noted that none of the other courts of appeals had addressed the issue after the Supreme Court issued its Kwai Fun Wong decision.  Id. at 817-18.

Given that the First Circuit has not spoken on the question, the Court is persuaded by the analysis in Herr and holds that Section 2401(a) operates as a time bar but not as a jurisdictional constraint.[1]  That does not, however, automatically confer jurisdiction on this Court.  The Court must next address whether Redmond filed his claim within the six-year statute of limitations, and, if he failed to do so, whether the limitations period was equitably tolled.  Id. at 818.

---

[1] For this reason, the Court evaluates the Defendants' motion under Fed. R. Civ. P. 12(b)(6) and not 12(b)(1).

C.      Redmond Filed After the Statute of Limitations Lapsed

As noted above, 28 U.S.C. § 2401(a) required Redmond to file his action within six years "after the right of action first accrues." "The date on which the right of action first accrues is the date of the final agency action." Peavey v. United States, Civil No. 12-691 (CKK), 2015 WL 5063164, at * 10 (D.D.C. Aug. 26, 2015). The question, then, is the date on which the Board's decision in Redmond's case became final.

The Board first notified Redmond of its adverse determination regarding his application for correction on July 18, 2002. Doc. No. 8-3. That means that the statute of limitations period on Redmond's claim expired in 2008. If, however, the Board reopened Redmond's case to reconsider the adverse determination, any resulting decision reset the statute of limitations clock. Peavey, 2015 WL 5063164, at * 10; see Green v. White, 319 F.3d 560, 566 (3d Cir. 2003) (holding that petition for rehearing to the Army Board that does not proffer "new evidence" or "changed circumstances does not restart the six-year statute of limitations"). "A case may be considered re-opened when the agency undertakes a substantive reconsideration of the merits and renders a decision on the merits." Peavey, 2015 WL 5063164, at * 10 (internal quotation marks omitted). There is no indication here that the Board reconsidered its 2002 decision. The Board's Executive Director informed Redmond that, while he acknowledged that some of the evidence Redmond submitted was "new," that evidence was not "material" such that the Board, if presented with the new evidence, would alter its decision. Doc. No. 1-5. The Executive Director concluded that "reconsideration is not appropriate at this time." Id. Thus, the Executive Director declined to bring Redmond's case to the Board anew and indicated that the Board would not undertake a substantive reconsideration. Redmond, therefore, was subject to the six-year statute of limitations

period that ensued following the Board's 2002 determination, expiring in 2008, and his action is time barred under 28 U.S.C. § 2401(a) unless equitable tolling applies.

### D.  Equitable Tolling Is Not Applicable

Failure to abide by the applicable limitations period results in dismissal unless "the complaint (and any other properly considered documents) . . . sketch a factual predicate that would provide a basis for tolling the statute of limitations." Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014) (internal quotation marks omitted).  "[E]quitable tolling only applies 'if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit.'" Id. at 120 (quoting Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998)).  In other words, Redmond makes a case for equitable tolling only if the information vital to the filing of his suit was unavailable to him, despite his reasonable diligence, before the limitations period expired. Id. at 121.  "Equitable tolling is a sparingly invoked doctrine used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands." Dawoud v. Holder, 561 F.3d 31, 36 (1st Cir. 2009) (internal citation omitted). Redmond bears the burden of demonstrating that he pursued his rights diligently and that he was prevented from bringing suit by "extraordinary circumstances."  Williams v. Litton Loan Servicing, C.A. No. 10-11866-MLW, 2011 WL 3585528, at * 3 (D. Mass. Aug. 15, 2011) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Redmond asserts he is entitled to equitable tolling because he was not able to procure a statement from Col. Murphy until 2011 "despite attempts to do so."  Doc. No. 9 at 5.  For unspecified reasons and "despite efforts to obtain it," prior counsel was not able to obtain Col. Murphy's statement.  Id. at 4.  Redmond contends that he did not understand the significance of the out-of-sequence marks until 2011, and that he lacked funds to pursue the matter in 2001.  Id.

at 4, 10.  The thrust of Redmond's argument as to why his discharge status should now be reconsidered is that KJMurphy improperly entered marks on Redmond's service record, whereas prior counsel focused on the low marks being out of order chronologically.  Id. at 5.  Redmond argues that he is entitled to discovery regarding when he should have known about KJMurphy and the diligence of his efforts to procure a statement from Col. Murphy.  Id.

In assessing whether the factual predicate establishing grounds for equitable tolling exists, "a district court engages in no fact finding.  Rather, it presumes that the facts are as properly alleged by plaintiff[] and/or reflected in properly considered records, with reasonable inferences drawn in plaintiff['s] favor."  Abdallah, 752 F.3d at 119.  From the Court's review of the complaint and the other materials submitted by the parties, see supra section IV.A, the Court concludes that Redmond has not met his burden of demonstrating extraordinary circumstances warranting equitable tolling. When Redmond applied for a correction to his service record in 2001, his counsel indicated that he could obtain a statement from Col. Murphy.  Redmond nonetheless argues that neither he nor his counsel were able to obtain the statement despite their efforts to do so, but Redmond cites no extraordinary circumstances that precluded them from acquiring evidence from Col. Murphy, nor does he provide facts demonstrating his reasonably diligent efforts to attain Col. Murphy's statement.  Redmond may not engage in discovery to uncover facts demonstrating his diligence because the Court is precluded from fact-finding at this stage.  The Court is constrained to make its determination from Redmond's allegations and the records before the Court.

Moreover, the statement that Col. Murphy ultimately provided does not indicate that KJMurphy improperly entered marks on Redmond's service record.  Col. Murphy instead states that he excluded the low marks in his calculation of Redmond's final average because the low marks were "noticeably out of sequence," the same argument Redmond made in his 2001

application.  Doc. No. 1-2 at 5.  However, Col. Murphy does not explain why he or anyone else has authority to omit the marks from Redmond's service record.  Finally, although Redmond may not have appreciated KJMurphy's role and the effect the low marks had on his overall average, and thus his discharge status, he has failed to show that he could not have attained that information using reasonable diligence.  There is no indication that Redmond's service record was unavailable to him at any point or that the resources he lacked would have uncovered evidence essential to bringing his suit.  Instead, the documents before the Court demonstrate that reasonable diligence would have revealed the alleged facts underlying Redmond's claim.  Thus, Redmond's claim is not eligible for equitable tolling.

V.      CONCLUSION

For the foregoing reasons, the Court ALLOWS the Defendants' motion to dismiss, Doc. No. 7.

**So Ordered.**

/s/ Leo T. Sorokin
United States District Judge